IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LAURIE BORDOCK                                                                                    PLAINTIFF

v.                                    Civil No. 3:25-cv-03031

MOUNTAIN HOME, CITY OF                                                                       DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Laurie Bordock (hereinafter "Bordock") pursuant to 42 U.S.C. § 1983. Bordock proceeds *pro se* and *in forma pauperis*.

The case is before the Court for preservice screening under the provisions of 28 U.S.C. § 1915(e)(2)(b). Pursuant to § 1915(e)(2)(b), the Court has an obligation to dismiss a case at any time if the Court determines that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from relief. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation

I. **BACKGROUND**

Bordock filed a complaint on May 14, 2025, alleging that her civil rights were violated by being falsely arrested by Officer Daniel King and seeking 10 million dollars and compensatory damages of $278 which she paid to bail out of jail. (ECF No. 2, pp. 3–4). Bordock alleges that her rights were violated when she was arrested for asking a lady for 50 cents in the Tractor Supply parking lot. (ECF No. 2, pp. 4, 6).

In her amended complaint Bordock alleges that her right to life, liberty, and the pursuit of

1

happiness was violated, but does not tie this claim to any specific constitutional rights. (ECF No. 17, p. 3). She also lists defamation, libel, and slander as a basis for federal question jurisdiction. *Id*. Bordock elaborates that the date of her false arrest was March 27, 2025, and states that she faces constant harassment from the police. (ECF No. 17, p. 4). Bordock states that she has been threated with arrest for feeding stray cats, that she was threatened with arrest for stealing a Tractor Supply cart while trying to return the cart to Tractor Supply, and that she had been banned from shopping at the Twin Lakes Plaza shopping center. (ECF No. 17, p. 6).

Bordock has also sent letters to the Court, which provide some background information. In a letter dated June 4, 2025, Bordock reports that the Mayor of Mountain Home is involved with the Sinaloa Mexican Cartel, child sex-trafficking, and drug trafficking. Bordock states that the District Court told her that if she did not get in trouble for six months, they would drop the current charges of disorderly conduct and she was given back $255 from the bail bonds fee. (ECF No. 8 p. 1). Bordock reiterates her demand for 10 million dollars in damages for civil rights violations and states that Officer Daniel King, Officer James Carpenter, and Officer Petite should not be allowed to falsely arrest or threaten to falsely arrest decent Americans like her. (ECF No. 8, p. e).

In a letter incorrectly dated as June 23, 2024, Bordock complains that the City of Mountain Home should be focused on cleaning up drug and child-sex trafficking networks rather than harassing people like her. (ECF No. 10, p. 1). Bordock reports being told by locals that the Mayor is working with a Cartel. *Id*. Bordock further reports that juveniles are being given dope and driving dangerously while the police do nothing to stop this behavior, choosing instead to arrest Bordock for asking someone for a couple of quarters and for feeding stray cats. *Id*. Bordock discusses a few more people she has heard are criminally involved and that the City of Mountain Home should be

focusing their police efforts on dangerous individuals and on getting a new Mayor. (ECF No. 10, p. 2).

In a letter dated July 30, 2025, Bordock states that she was falsely arrested on March 27th by Officer Daniel King after asking a lady in a car for a couple of quarters. (ECF No. 12, p. 2). Bordock states that she paid nearly $300 to get out of jail, and the officer was blasting hard rock music while she was detained, put the handcuffs on very tight, and did not read her Miranda Rights when she was arrested. *Id*. However, when she appeared in court most of her money was returned except for about thirty-five dollars. *Id*. Bordock repeatsthat she was later threated by Officers Jones, Carpenter, Tyler, and Politter with arrest for stealing a Tractor Supply shopping cart which she was trying to return to the store after finding it by a blessing box. *Id*.

In a letter dated October 7, 2025, Bordock states that she is being terrorized by juvenile delinquents and attempted to get help from two police officers who did take the license plate numbers but also informed her that she was banned from the McDonald's location where this occurred. (ECF No. 14, p. 2). She later had another negative experience with juvenile delinquents hanging out in the Sonic parking lot; she was sitting in another stall, and two Officers, McCoy and Steele, told her she had to calm down and stop causing a scene. *Id*. Bordock states that a local oil company, the City of Mountain Home and their Mayor are in league with a cartel and there is drug trafficking and child sex-trafficking at the local airport. (ECF No. 14, p. 3). Bordock reiterates her complaint that she has been threatened with arrest for feeding stray cats, naming Officer Campfield as the harassing officer. *Id*. Bordock states that the City of Mountain Home has returned to their old practices as in 2002 or so, when she was told by a policeman to leave town "or else" resulting in her taking a bus to Harrison. *Id*. Bordock states that the juvenile delinquents are not

microchipped like the rest of the drug dealers, and they need to be so that they can be controlled. (ECF No. 14, p. 5). Bordock states that she called Lieutenant Bryan Corbett at the local precinct to complain about Officers Steel and McCoy harassing her at the Sonic Drive-In instead of arresting the Juvenile delinquents and that he did not care. (ECF No. 14, p. 7). Bordock reiterates that the police are rumored to be involved with a cartel. (ECF No. 14, p. 8). Bordock reports that she is banned from a number of businesses including Tractor Supply, Chens Chinese Restaruant, Twin Lakes Plaza, McDonads, Brick Oven Pizza, Harp's and Wendy's. *Id*. Bordock states that she believes the harassment by juvenile delinquents at the Sonic Drive-In as well as at the Twin Lakes Plaza are an inside job by the Mayor who wants her out of their city because she is suing them. (ECF No. 14, p. 10). Bordock alleges that Mayor Adams used to be the Postmaster General but was fired in 2003 for fraud and corruption. (ECF No. 14, p. 11).

In a letter dated November 29, 2025, Bordock states she was threated with arrest by Officer Gabriel Bently while sitting under an awning to get out of the rain in a shopping center. (ECF No. 18, p. 11). Bordock reports having been banned from many stores. (ECF No. 18, p. 3). Bordock reiterates her belief that Mountain home has a child sex-trafficking network, connections to Cartels, and is importing prison labor and engaging in prison slavery. (ECF No. 18).

Reading Bordock's complaints as a whole, and liberally, it appears that Bordock has three categories of complaints: 1) false arrest by Officer King on March 27, 2025, in the Tractor Supply parking lot when asking a woman in a car for 50 cents which resulted in Bordock being charged with disorderly conduct; 2) harassment and threats of arrest by various officers for feeding cats, sitting under an awning at a shopping center, and for allegedly stealing a shopping cart which she was trying to return; 3) complaints that the City of Mountain Home is involved in illegal activities

and is hostile toward Bordock and others.

## II. APPLICABLE LAW

Under § 1915(e)(2)(b), the Court is obligated dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.  *Spencer v. Rhodes,* 656 F. Supp 458, 464 (E.D.N.C. 1987); *In re Tyler,* 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'"  *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* at 544.  However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) each defendant acted under color of state law, and (2) that he or she violated a right secured by the constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

**A.  False Arrest by Officer Daniel King**

Bordock alleges that she was unlawfully arrested by Officer King in the Tractor Supply parking lot while asking a stranger for a small amount of money. (ECF Nos 2, 8, 12, 17). Bordock reports that she had a District Court date for this arrest where most of her bail money was returned and she was told that the charges of disorderly conduct would be dropped in six months if she had no further incidents. (ECF No. 8). Bordock does not state whether she plead guilty or not guilty to the charge of disorderly conduct and does not state whether the unreturned money was a fine; Bordock provides no records regarding this court date.

The Court has used the facts provided to find Baxter County case CR-25-700. Bordock was arrested for disorderly conduct and plead not guilty. The case was deferred for six months to be dismissed if Bordock had no further arrests. As Bordock was not arrested again, the case was dismissed on December 9, 2025.

Bordock does not clarify in her pleadings whether she seeks to sue Officer King in his individual capacity or in his official capacity. Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant

6

in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claim against Officer King would be treated as a claim against the City of Mountain Home. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish the City of Mountain Home's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Bordock has not alleged that any policy of the City of Mountain Home contributed to the alleged violation of her rights on the day of her arrest. Therefore, the Court will consider Bordock's claim against Officer King in his individual capacity.

      i.    <u>False Arrest</u>

An officer is entitled to "qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Joseph*, 712 F.3d at 1226. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id*. (internal quotation marks and citation omitted). The existence of probable cause is a question of law. *Id*. at 1227. A false arrest claim under § 1983 "fails as a matter of law where the officer had probable cause to make the arrest."

*Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Eighth Circuit has provided a fluid definition to provide some guidance in evaluating the existence of probable cause. Specifically, the Eighth Circuit has stated that "[p]robable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable officer to believe that the defendant has committed or is committing an offense." *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (*quoting Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

"We must give law enforcement officers 'substantial latitude in interpreting and drawing inferences from factual circumstances,' ... but such latitude is not without limits." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (*quoting United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997)). First, evidence tending to "negate the possibility that a suspect committed a crime is relevant" to whether probable cause exists. *Id*. "In this sense, the Fourth Amendment requires that we analyze the weight of all the evidence—not merely the sufficiency of the incriminating evidence." *Id*. Second, "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking arrest." *Id*. (internal punctuation marks and citations omitted).

Here, Bordock alleges that she was arrested for disorderly conduct while simply asking

someone for change. Read liberally, Bordock alleges she was arrested by Officer King for disorderly conduct without a warrant when she was not engaged in disorderly conduct. Plaintiff has pled sufficient facts to raise the question of whether probable cause existed at the time of her arrest and this claim should be allowed to proceed.

    ii.    <u>Miranda Rights</u>

In one of her letters to the Court, Bordock reported that she was not read her Miranda rights when she was arrested by Officer King. (ECF No. 12, p. 2). The Constitution does not require the giving of Miranda warnings. *See e.g., Chavez v. Martinez*, 538 U.S. 760 (2003). In *United States v. Patane*, 542 U.S. 630 (2004), the Supreme Court noted that "[o]ur cases . . . make clear . . . that a mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule. . . [T]he nature of the right protected by the Self-Incrimination Clause, which the Miranda rule, in turn, protects . . . is a fundamental trial right." *Id*. at 641 (internal quotation marks and citations omitted). If statements obtained during custodial interrogation are not used against the party, there is no constitutional violation. *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987). Here, Bordock has not alleged that there was a custodial interrogation or that her statements made during that time were used against her. Therefore, this is not a cognizable claim.

  **B. Harassment by Various Officers**

In her amended complaint, Bordock states that she faces constant harassment from the police while not violating the law, and provided the example of being threatened with arrest by Officer Campfield for feeding stray cats outside. (ECF No. 17, p. 4). In a letter to the Court Bordock states she was threatened with arrest by Officers Jones, Carpenter, Tyler, and Politter,

when she was trying to return a Tractor Supply shopping cart which they believed she had stolen. (ECF No. 12, p. 2). Bordock's claims of harassment by the police consist of situations where she has been told that her actions may result in her arrest. To the extent that these interactions can be considered harassment, Bordock has not alleged that they have escalated beyond what would be considered verbal threats.

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir.1992). "We have held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, *see Hopson,* 961 F.2d at 1378–79, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right. *See Bishop v. Tice,* 622 F.2d 349, 354 (8th Cir.1980)." *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). Plaintiff does not allege that any of the officers have engaged in verbal threats that are brutal or wantonly cruel, or that they exert the type of coercive pressure that has caused her to suffer the deprivation of a constitutional right. Therefore, Bordock has failed to state a claim upon which relief may be granted with regards to harassment.

### C. Claims Against the City of Mountain Home

In her amended complaint, Bordock makes a number of statements about the City of Mountain Home—that it is engaged in prison slavery, that the city is lawless and involved in drug dealing, the mayor is a criminal, and that there are juvenile terrorists who behave recklessly. (ECF No. 17, p. 6). These allegations are broad and do not connect her allegations to which of her rights are being violated, or the person violating them.

It is unclear from her pleadings what claims Plaintiff is trying to state, and the Court will

not speculate as to potential claims. Even under the notice pleading standards of Federal Rule of Civil Procedure 8, a *pro se* plaintiff must allege sufficient facts to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *See Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level"). Therefore, Plaintiff has failed to state a claim upon which relief may be granted.

Bordock also lists defamation, libel, and slander as a basis for federal question jurisdiction. (ECF No. 17, p. 3). Defamation of character does not state a constitutional violation. "[D]efamation, per se, is not actionable under section 1983." *Underwood v. Pritchard*, 638 F.2d 60, 62 (8th Cir. 1981). The Supreme Court has held that a person's interest in his reputation is not considered liberty or property protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). In other words, the "Supreme Court has made clear that federal courts are not to view defamatory acts as constitutional violations." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 400 (3d Cir. 2000). No cognizable claim for defamation is stated, and therefore this claim should not be allowed to proceed.

### III.  CONCLUSION

Accordingly, the Court recommends that Bordock's claim against Officer King for false arrest be allowed to proceed in his individual capacity and that all of Bordock's claims against the City of Mountain Home be Dismissed Without Prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

DATED this 12th day of December 2025.

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE